**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **ANTONIO M. BRANCO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 20-cv-10264-DJC** |
| | ) | |
| **KIEL (a/k/a KYLE) HUARD, LAWRENCE** | ) | |
| **FERREIRA, THOMAS MAURETTI,** | ) | |
| **DANIEL RACINE, ALBERT DUPERE,** | ) | |
| **FALL RIVER POLICE DEPARTMENT** | ) | |
| **and CITY OF FALL RIVER,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**<u>MEMORANDUM AND ORDER</u>**

**CASPER, J.**                                                                                 **March 9, 2021**

## I.    Introduction

Plaintiff Antonio M. Branco ("Branco") has filed this lawsuit against Defendants Kiel Huard ("Huard"), Lawrence Ferreira ("Ferreira"), Thomas Mauretti ("Mauretti"), Daniel Racine ("Racine"), Albert Dupere, ("Dupere"), the Fall River Police Department (the "FRPD") and the City of Fall River (the "City") (collectively, "Defendants") alleging assault (Count I), fraud (Count II), malicious destruction of property (Count III), agency (Count IV), conversion (Count V), and emotional distress (Count VI). D. 1-1. Branco seeks "attachment, trustee process, reach and apply and receivership" (Count VII), injunctive relief (Count VIII) and treble damages (Count IX). <u>Id.</u>[1]

---

[1] Branco includes Counts I thru IX in Count X, asserting that Defendants are "individually and[/]or collectively in violation [of] State and Federal Laws, Statutes and Torts for each of the . . . listed Counts . . ." D. 1-1 at 17-18.

Defendants have moved to dismiss.  D. 10.  For the reasons stated below, the Court ALLOWS the motion.

## II.    Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from any conclusory legal allegations.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  If the complaint's allegations sufficiently state a cause of action under any viable theory, a motion to dismiss the complaint must be denied.  Roth v. United States, 952 F.2d 611, 613 (1st Cir.1991).  In considering such a motion, the court must "draw all inferences reasonably extractable from the pleaded facts in the manner most congenial to the plaintiff's theory."  Id.

## III.   Factual Background

The following allegations are from the complaint and are assumed to be true for the purpose of resolving Defendants' motion to dismiss.[2]  On or around April 9, 2016, Branco drove his vehicle

---

[2] In considering the motion to dismiss, the Court also may consider documents attached to or fairly incorporated into the complaint and facts susceptible to judicial notice.  See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012); McIntyre v. United States, 367 F.3d 38, 42 (1st Cir. 2004).  Accordingly, the Court will also consider the Superior Court docket in Commonwealth v. Branco, No. 1673-CR-00225, D. 10-1, and Branco's complaint in Superior Court, Branco v. Silva, No. 2073-CV-0012A (Mass. Supr. Ct. Jan. 6. 2020)), D. 10-3.

onto his property, located in Fall River, Massachusetts.  D. 1-1 ¶ 9.  The vehicle contained various items, including personal belongings and items of sentimental value.  Id. ¶ 10.  Upon entering the property's driveway, Branco saw two FRPD vehicles located approximately twenty feet into Branco's driveway.  Id. ¶ 12.  When Branco attempted to enter his residence, Officer Huard prevented him from going inside.  Id. ¶ 13.  Branco informed Officer Huard that his sisters were in the residence and were expecting Branco to provide medication.  Id. ¶ 14.  Officer Huard told Branco that he would not be permitted to enter the residence and told Branco he had to answer some questions.  Id. ¶ 15.  Officer Huard instructed Branco to leave the property, after which Branco proceeded to back his vehicle out of the driveway and parked it curbside, approximately a foot from the entrance of the driveway.  Id. ¶¶ 15-16.  After doing so, Branco again made repeated attempts to enter the residence, but was told he could not enter the home and was "forced" into his vehicle.  Id. ¶¶ 17-19.  Branco then followed the officers between their two cruisers for approximately half a block, after which the officers flashed their lights and instructed Branco to exit the vehicle.  Id. ¶ 19.  Branco was subsequently arrested.  Id. ¶¶ 20-22.  The officers took Branco to the police station where Officer Huard took Branco's keys.  Id. ¶¶ 23-24.  The officers did not return the keys to Branco and did not tell Branco's father where they were or who had them.  Id. ¶ 24.

Following Branco's arrest, Branco asserts that he "repeatedly and consistently" contacted his attorney, seeking the return of the vehicle to his residence.  D. 10-3 ¶ 9.  In or around October 2016, Branco learned that his vehicle had been towed.  D. 1-1 ¶¶ 25-26.  On December 5, 2016, Branco wrote the towing company, Tech Towing, demanding the return of his vehicle.  D. 10-3 ¶ 13.  On December 6, 2017, approximately one year later, a jury returned guilty verdicts against Branco on a charge of manslaughter and on one count of abuse of a disabled person.  D. 10-1 at

15. Branco was subsequently sentenced and remains incarcerated.  Id. at 16-17.  On or around

January 24, 2019, Branco learned that his vehicle and its contents had been "junked" in December

2016 by the towing company.  D. 1-1 ¶ 28; D. 36-1 at 1.

## IV.    Procedural History

Branco instituted this action in Bristol Superior Court on December 23, 2019.  D. 1-1.

Defendants removed the matter to this Court on February 11, 2020.  D. 1.  Defendants now have

moved to dismiss.  D. 10.

## V.    Discussion

### A.    Statute of Limitations

#### 1.    Tort Claims and Civil Rights Claims

Branco asserts several tort claims against Defendants, including assault, fraud and

emotional distress claims (Counts I-II, VI), D. 1-1 ¶¶ 32-33, 35-36, 46-47, as well as claims that

Defendants are responsible for said torts as "superiors and agents," (Count X), id. ¶ 40-41.  In

Massachusetts, "[t]he limitations period for tort claims . . . is three years.  Rice v. Santander Bank,

N.A., 196 F. Supp. 3d 146, 153 (D. Mass. 2016) (citing Mass. Gen. L. c. 260, § 2A); see, e.g.,

O'Malley v. Burr, No. 1784-CV-03497-BLS-2, 2018 WL 2050158, at *3 (Mass. Super. Mar. 23,

2018).  Branco alleges that Defendant Huard assaulted Branco through "verbal" threats and

"bodily language," on the date of his arrest.  D. 1-1 ¶¶ 32-33.  He also asserts that the other

Defendants "did by their actions individually and or collectively assault and put [Branco] in fear

of both apprehension and life."  Id. ¶ 33.  Branco alleges that Defendant Huard committed fraud

via "willfully deceitful statements" that induced Branco to remove his vehicle from the residence,

leading to the vehicle's eventual loss.  D. 1-1 ¶ 35.  Branco alleges that Defendant Huard's "total

disregard" for both Branco's property and "the well being and life of [Branco] and [Branco's]

loved ones" caused him emotional distress, id. ¶¶ 46-47, and that the other Defendants participated in the fraud and infliction of emotional distress, id. ¶¶ 36, 47.

According to Branco's allegations, these events took place on April 9, 2016, the day of his arrest. D. 1. Branco, therefore, had until April 9, 2019 to file any such claims as a result of the alleged assault, fraud or emotional distress. Rice, 196 F. Supp. 3d at 153. As the complaint was not filed until December 2019, these claims are untimely. To the extent Branco also asserts civil rights violations stemming from the events of April 9, 2016, when adjudicating claims pursuant to 42 U.S.C. § 1983, a federal court "ordinarily must borrow the forum state's limitation period governing personal injury causes of action." Williams v. City of Brockton, 59 F. Supp. 3d 228, 240 (D. Mass. 2014) (internal quotation marks omitted) (quoting Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001)). The limitations period for personal injury in Massachusetts is three years, id. (citing Mass. Gen. L. c. 260, § 2A), and it "runs separately from the occurrence of each civil rights violation that causes actual damage to the plaintiff (as long as the plaintiff knows or should have known of the injury)." McSweeney, 241 F.3d at 51 (citing Hernandez Jimenez v. Calero Toledo, 576 F.2d 402, 404 (1st Cir. 1978)). Accordingly, any civil rights violations stemming from the events of April 9, 2016 are also time-barred.

### 2.   *Property Damage Claims*

Turning to Branco's claims with respect to his vehicle and personal belongings, Branco asserts claims for fraud and emotional distress, as well as malicious destruction of property and conversion (Counts III and V). D. 1-1 at ¶¶ 35-36, 38-39, 43-44, 46-47. As with Branco's claims stemming from his arrest on April 6, 2019, he claims that Defendants are responsible for said torts as "superiors and agents," (Count X), id. ¶ 40-41.

5

Although Branco's vehicle was junked in December 2016, Branco argues his property damage claims should not be time barred because he was not notified of the "junking" until January 24, 2019. D. 36 at 4-6; D. 1-1 ¶ 28. Causes of action sounding in tort . . . accrue either when the plaintiff is injured as a result of the defendant's unlawful act, or, if the wrong is 'inherently unknowable,' when the plaintiff knows or should have known that [he] has been injured." Nat'l Ass'n of Gov't Employees v. Mulligan, 854 F. Supp. 2d 126, 130 (D. Mass. 2012) (quoting Pagliuca v. City of Boston, 35 Mass. App. Ct. 820, 824 (1994)). Under Massachusetts law, equitable tolling is permissible when a prospective plaintiff "did not have, and could not have had with due diligence, the information essential to bringing suit." Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 631 (1997). Equitable tolling "provides no relief to a plaintiff who knows of facts sufficient to bring the cause of action." Abdallah v. Bain Capital LLC, 752 F.3d 114, 120 (1st Cir. 2014). Rather, equitable tolling only applies "if a plaintiff exercising reasonable diligence could not have discovered information essential to the suit." Id. (quoting Bernier v. Upjohn Co., 144 F.3d 178, 180 (1st Cir. 1998)). Here, Branco was in contact with his attorney regarding efforts to obtain his vehicle starting in July 2016, culminating in his reaching out to the towing company in December 2016. D. 10-3 ¶ 17. However, he was not informed regarding the "junking" of his vehicle until January 24, 2019. D. 1-1 ¶ 28. Without any evidence that Branco knew of the "junking" prior to the January 24, 2019 notification, Branco's assertion that he did not have the information necessary—or a cause of action—until he learned that his vehicle had been "junked" in January 2019, D. 36-1 at 1-2, despite due diligence on his part in repeatedly reaching out to his counsel and the towing company, meets the requirements for equitable tolling in Massachusetts. See McParland v. Colvin, 215 F. Supp. 3d 129, 132 (D. Mass. 2016) (noting that "[e]quitable tolling is normally appropriate only when circumstances beyond a litigant's control have prevented

him from filing on time" (quoting <u>Delaney v. Matesanz</u>, 264 F.3d 7, 15 (1st Cir. 2001))). Accordingly, Branco's claims as limited to the "junking" of his vehicle in December 2016 are not time-barred.

**B.    <u>Failure to State a Claim</u>**

Although Branco's claims with respect to his vehicle and personal belongings are not time-barred, they otherwise fail for the reasons stated below.

*1.     The City and the FRPD*

Branco purports to state a claim against the City and the FRPD, alleging that Defendants injured Branco via their roles as "superiors and agents." D. 1-1 ¶ 41. Since the FRPD is not a separate entity from the City, the claims against the FRPD are dismissed. <u>See</u> <u>Merisier v. Ellender</u>, 197 F. Supp. 3d 310, 320 (D. Mass. 2016) (dismissing all claims against Mansfield Police Department on grounds the Department is not a separate entity from the City).

Without any allegation that an identified unconstitutional policy or custom was the "moving force" behind his alleged injuries, Branco cannot allege municipal liability against the City under <u>Monell v. Department of Social Services of New York</u>, 436 U.S. 658 (1978). There are "limited circumstances" in which a municipality's lack of training or supervision is equivalent to an official governmental policy for purposes of this analysis. <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011); <u>Rodriques v. Furtado</u>, 950 F.2d 805, 813 (1st Cir. 1991). Such circumstances occur "when the failure to train or supervise amounts to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" <u>Dew v. City of Bos.</u>, 405 F. Supp. 3d 294, 303 (D. Mass. 2019) (citing <u>Connick</u>, 563 U.S. at 61). "Municipal liability may only be imposed when there are 'underlying, identifiable constitutional violations' that are 'attributable to

7

official municipal policy.'" Id. (citing Kennedy v. Town of Billerica, 617 F.3d 520, 531 (1st Cir. 2010)).

Here, Branco has not identified any unconstitutional violation that may be attributed to an official policy. See generally, D. 1-1. Branco fails "to provide facts that would demonstrate that officers engaged in a concerted action with the aim of violating [Branco's] civil rights," McElroy v. City of Lowell, 741 F. Supp. 2d 349, 355 (D. Mass. 2010), and fails to allege what civil rights were violated, if any. Branco does not assert that the City had requisite knowledge of an obvious risk to its citizens' constitutional rights, nor does he allege facts evidencing that the City disregarded this risk, thereby causing Branco's alleged injury. City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985) (noting that "[w]here the policy relied upon is not in itself unconstitutional, considerably more proof than [a] single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation").

Branco does not allege any facts to support the assertion or inference that the training provided by the City was "constitutionally deficient," nor does he allege "any facts that could support a conclusion that [the City's] allegedly deficient training . . . was the cause of" any incident. Barker, 795 F. Supp. 2d at 124; cf. Bochart v. City of Lowell, 989 F. Supp. 2d 151, 155 (D. Mass. 2013). Accordingly, to the extent Branco alleges a failure to train claim against the City, the motion to dismiss is allowed.

2.      *Defendants Racine, Dupere, Ferriera and Mauretti*

With respect to the allegations against Defendants Racine, Dupere, Ferriera and Mauretti, dismissal is appropriate with respect to any claims against these officers in their official capacity, as Branco seeks monetary damages and such claims are essentially against the City. Burrell v.

Hampshire Cty., 307 F.3d 1, 7 (1st Cir. 2002) (noting that "[a] damages suit against an official in an official capacity is tantamount to a suit against the entity of which the official is an agent"). With respect to any remaining claims against Defendants in their individual capacity, Branco fails to allege any direct participation by Defendants pertaining to the "junking" of Branco's vehicle. See generally, D. 1-1.   Turning first to Defendants Racine and Dupere, Branco mentions that Defendant Racine was the Chief of Police at the time of his arrest, id. ¶ 5, and that Defendant Dupere is the current Chief of Police, id. ¶ 6.  Branco does not allege any acts performed by either Defendants Racine or Dupere personally beyond their alleged responsibility to train and supervise officers, which they would do in their official capacities.   See Cordero, 368 F. Supp. 3d at 151 (holding that given chief officer was "not present at the stop, and the only basis for the claims against [him] is his allegedly negligent training of [other officers]," he is "shielded under Massachusetts law from personal liability for negligent and grossly negligent conduct, including deliberate indifference, while acting within the scope of his office or employment").

"In the absence of personal involvement, a supervisor is liable for the acts of a subordinate only if (1) the subordinate's behavior results in a constitutional violation, and (2) the supervisor's action was 'affirmatively linked' to the behavior only in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." Turner v. Baker, No. 17-cv-12283-WGY, 2018 WL 1885667, at *2 (D. Mass. Apr. 18, 2018) (quoting Hearty v. Somerset County, 53 F.3d 1367, 1379-1380 (1st Cir. 1995)).   Here, there are no well-pleaded, non-conclusory factual allegations that Defendants Racine or Dupere were "personally involved in, aware of, or deliberately indifferent to, any of the actions of some other subordinate complained of" in the complaint.  Turner, 2018 WL 1885667,

at *2; see Feliciano v. DuBois, 846 F. Supp. 1033, 1045 (D. Mass. 1994).  Accordingly, the complaint fails to state a claim against Defendants Racine and Dupere.

Similarly, with respect to claims against Defendants Ferriera and Mauretti, the complaint solely alleges that Branco informed Defendant Ferriera that he needed to provide care to his siblings on the day of his arrest, D. 1-1 ¶ 17, but alleges no further facts as to Defendant Ferreira's involvement in Branco's alleged injuries.  See generally, id.  Likewise, the complaint solely alleges that Defendant Mauretti was present when Defendant Huard took Branco's keys and brought them to the station and that Defendant Mauretti ignored Branco when he again explained that he needed to provide care to his siblings.  Id. ¶¶ 23-24.  These assertions are inadequate to support any of Branco's claims against these defendants stemming from the towing or "junking" of his vehicle, nor do they allege that any of the Defendants were involved in the "junking."  Accordingly, the motion to dismiss is allowed as to Defendants Racine, Dupere, Ferriera and Mauretti.

### 3.    Defendant Huard

Finally, turning to Branco's claims against Defendant Huard, all assertions made as to Defendant Huard's actions are restricted to Branco's arrest on April 9, 2016.  See generally, D. 1-1.  Any claims related to the events of April 9, 2016 are time-barred.  Rice, 196 F. Supp. 3d at 153. To the extent Branco is alleging that Defendant Huard is involved in the later towing and "junking" of his vehicle, Branco fails to assert any acts committed by Defendant Huard in this regard. Without any assertions that Defendant Huard exercised control over Branco's vehicle or otherwise played a role in the towing or "junking" of Branco's vehicle following Branco's arrest in 2016, Branco's claims against Defendant Huard are also dismissed.

**VI.**     **Conclusion**

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss, D. 10.[3]

**So Ordered.**


/s/ Denise J. Casper

United States District Judge


---

[3] Branco's remaining claims assert forms of redress rather than independent causes of action.  <u>See</u> D. 1-1 (seeking attachment, trustee process, reach and apply as well as receivership; injunctive relief; and treble damages). As all of Branco's causes of action are dismissed, the remaining claims related to such redress (Counts VII, VIII and IX) are also dismissed.